(C. D. 2005)

A. M. ROSS-SMITH *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 12, 1958)

*Eugene R. Pickrell* (*Richard F. Weeks* and *George E. Long* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

WILSON, Judge: This case involves a retrial of the issues involved in protest 172633–K, *A. M. Ross-Smith* v. *United States*, 35 Cust. Ct. 269, Abstract 59346. In that case, it was held in substance that the importation before the court was properly classifiable free of duty under the provisions of paragraph 1733 of the Tariff Act of 1930 as a distillate obtained from petroleum, inasmuch as the involved substance was not imported in an ampoule or a capsule as those terms are used in paragraph 23. Upon the motion of the plaintiff, the record in protest 172633–K was incorporated into the pending case, and the plaintiff thereupon rested. The only evidence introduced by the defendant was the deposition of one E. V. Blesser of Detroit, Mich., to which further reference will hereinafter be made. The tariff provisions involved in this case are:

Paragraph 23 of the Tariff Act of 1930:

Chemicals, drugs, medicinal and similar substances, whether dutiable or free, when imported in capsules, pills, tablets, lozenges, troches, ampoules, jubes, or similar forms, including powders put up in medicinal doses, shall be dutiable at not less than 25 per centum ad valorem.

Paragraph 1733 of the Tariff Act of 1930:

Oils, mineral: Petroleum, crude, fuel, or refined, and all distillates obtained from petroleum, including kerosene, benzine, naphtha, gasoline, paraffin, and paraffin oil, not specially provided for.

In the incorporated case, the court did not pass upon the question as to whether the involved merchandise was a chemical or similar substance, or whether it was enclosed in a container of similar form to an ampoule or a capsule.

The issues now presented for determination are: (1) Is the substance before the court, which is conceded to be a petroleum distillate used as a fluid for cigarette lighters and to remove spots from clothes, a chemical or a similar substance as those terms are used in paragraph 23 of the Tariff Act of 1930; and (2) if the merchandise under consideration is a chemical or similar substance for tariff purposes under paragraph 23, was it imported in one of the named forms or containers set forth in paragraph 23 or in something of similar form?

The importation is not and, in the light of the admitted facts, could not be found to be a drug, or a medicinal or similar substance. If it does not qualify as a chemical or a substance similar to a chemical, it is, therefore, excluded from paragraph 23. It is also conceded that the involved merchandise is not in the form of pills, tablets, lozenges, troches, or jubes. If, therefore, it be found that the substance under consideration is not contained in an ampoule or a capsule or a form similar thereto, it still is not subject to the levy provided for under

paragraph 23, even though it be found to qualify as a chemical or a similar substance.

The Government admits that the substance before the court is a distillate of petroleum and that as such it is properly classifiable under paragraph 1733 of the Tariff Act of 1930 providing for duty-free admission for "all distillates obtained from petroleum." Government counsel contends correctly, however, that the provisions of paragraph 23 invade the terms of paragraph 1733 so as to deprive the merchandise of its free status if the involved substance, even though otherwise duty free, is a chemical or similar substance contained in an ampoule or a capsule or a similar form.

We know of no adjudicated case or any authoritative definition which would justify the finding that crude petroleum is a chemical. Kingzett's Chemical Encyclopaedia, eighth edition, at page 820, defines petroleum as follows:

PETROLEUM (Rock or Mineral Oil) occurs in the Miocene rocks of tropical and subtropical countries, and in smaller quantities in older rocks of colder countries. It is a natural, dark-coloured, oil-like deposit of hydrocarbon character, * * *

   *     *     *     *     *     *     *

The petroleum from all fields consists in the main of hydrocarbons, associated with small proportions of asphalt and compounds containing oxygen, nitrogen, and sulphur, * * *

In volume 10, at page 89, Encyclopedia of Chemical Technology, the following definition is given:

Petroleums are oily mixtures, consisting predominantly of hydrocarbons; they are sometimes found in seepages, and they are commonly produced industrially by drilling to reservoir formations where accumulations of oil and gas occur.

Webster's New International Dictionary, second edition, 1958, page 460, defines a chemical as follows:

chemical, n. A substance obtained by a chemical process, or used for producing a chemical effect. * * *

In Hackh's Chemical Dictionary, third edition, 1944, page 187, we find:

chemical. * * * (2) A substance of definite and known compositions; see chemicals. * * *

The merchandise herein involved is not obtained as the result of a chemical process, nor is it used to produce a chemical effect, nor does it have a definite chemical composition.

Since petroleum consists of a complex mixture of many materials, it cannot in a tariff sense be considered a chemical. It has been held by our appellate court that a distillate obtained from petroleum is not a chemical manufactured from petroleum. *Borne Scrymser Co.* v.

*United States*, 22 C. C. P. A. (Customs) 475, T. D. 47465; *United States v. Shell Eastern Petroleum Products, Inc.*, 26 C. C. P. A. (Customs) 132, C. A. D. 6.

It is difficult to state just what a chemical is in a tariff sense. In the case of *Ungerer & Co. (Inc.) v. United States*, 13 Ct. Cust. Appls. 534, T. D. 41425, the merchandise consisted of certain perfumery materials known as "resinaromes," produced by powdering Orris roots and moss, which were then dissolved in petroleum, ether, alcohol, or other solvent. This solvent was then distilled off, leaving a thick, gummy, resinous mass. The importation was classified under paragraph 61 of the Tariff Act of 1922 ,as an odoriferous or aromatic chemical. The appellate court held that the involved substances were properly classifiable under the third clause of the same paragraph as mixtures or combinations containing natural odoriferous or aromatic substances because they were not true chemicals, since the involved materials were not capable of being defined or expressed by definite chemical characters or symbols. However, it should be kept in mind that the court adopted the principle of *ejusdem generis* as a rule of interpretation since under paragraph 61 the words "and all natural or synthetic odoriferous or aromatic chemicals" were preceded by such specific words as "anethol, citral, geraniol, heliotropin * * *," all of which were "capable of being expressed by definite symbols used in chemistry." In view of that wording of paragraph 61, the court stated:

* * * Based upon the language of that provision and the testimony of record, we are of opinion that these resinaromes are not classifiable thereunder because they are not chemicals in the sense that they are capable of being expressed by a definite chemical formula or symbol. * * *

There is nothing in this record by way of direct testimony to indicate whether the petroleum distillate before us is or is not a chemical. However, being a distillate obtained from petroleum, we are of the opinion that the merchandise under consideration (plaintiff's illustrative exhibit 1) was not intended in the tariff sense to be construed as a chemical within the meaning of paragraph 23, as pointed out in the *Borne Scrymser Co.* case, *supra*.

As pointed out by the Court of Customs and Patent Appeals in the *Borne Scrymser Co.* case, *supra*, paragraph 561 of the Tariff Act of 1913, the predecessor of the present paragraph 1733 of the Tariff Act of 1930, contained the language "all *products* obtained from petroleum." [Italics supplied.] In the Tariff Act of 1922 (paragraph 1633), this language was changed so as to read "and all *distillates* obtained from petroleum." [Italics supplied.] This is the same language as that now appearing in paragraph 1733 of the Tariff Act of 1930. In the *Borne Scrymser Co.* case, *supra*, our appellate

court cites with approval the explanation for the change given in the Summary of Tariff Information, 1921, page 1404, as follows [italics supplied]:

*Important changes in classification.*—The phrase "and all products obtained from petroleum," paragraph 561, act of 1913, has been changed to read "and all distillates obtained from petroleum," so as not to include chemicals manufactured from petroleum. * * * [Italics quoted.]

It would appear, therefore, that the very purpose of the change in the language in the tariff act from "all products obtained from petroleum" to "all distillates obtained from petroleum" was to differentiate and distinguish distillates obtained from petroleum from chemicals manufactured from petroleum.

In the case of *S. Schwabacher & Co., Inc.* v. *United States*, 22 C. C. P. A. (Customs) 496, T. D. 47484, it was stipulated that the ·merchandise involved consisted of a distillate of petroleum which was classified as a medicinal preparation under paragraph 5 of the Tariff Act of 1930. As a petroleum distillate, the substance was claimed free of duty under paragraph 1733. The court in its decision made an exhaustive presentation of the legislative history back of the classification, stating the well-established rule of law that:

The principle has been often stated by this and other courts, in passing upon tariff laws, that the legislative intent is the lodestar of judicial decision, and the various rules of interpretation adopted by the courts are adopted for the purpose of arriving at such intent. *United States* v. *Guth Stern & Co.*, 21 C. C. P. A. (Customs) 246, T. D. 46777.

After a comprehensive consideration of the legislative history involved, the court concluded that, in a long chain of administrative practice in the classification of the material before it, Congress retained in paragraph 1733 of the Tariff Act of 1930 the exact language of paragraph 1633 of the act of 1922, under which products of the type involved had been consistently and invariably classified as duty free prior to the adoption of the Tariff Act of 1930 by Congress.

If the involved product is not a chemical, is it then a substance similar to a chemical? It would appear that a proper construction of the language of paragraph 23 indicates that the words "similar substances" were not intended at all to relate back to the word "chemicals." It will be noted that paragraph 23 opens with the words "Chemicals, drugs"; then follow the words "medicinal and similar substances." Clearly, the terms "medicinal" and "similar" are adjectives and not nouns. They modify the noun substances. Such a construction is given further weight by the consideration that it is difficult to think of Congress referring to a substance as being similar to a chemical, for it would appear that a substance is either a chemical or it is not. Otherwise, almost any conceivable substance

would be similar to a chemical. We are, therefore, of the opinion that the words "similar substances" are not intended to refer back to the words "Chemicals" and "drugs," but that a proper construction would be "Chemicals, drugs, medicinal substances and substances similar to medicinals." We are, therefore, of the opinion and hold that the material before us is not a chemical, in the tariff sense, and is not a substance similar to a chemical. Neither is it a "medicinal" nor a substance similar to medicinals.

However, were we to assume that the substance as imported is a chemical, we are of the opinion it was not imported in an ampoule or a capsule or in a container similar to either.

The following summary of the evidence taken from the incorporated case is not questioned:

An illustrative sample of the imported container, concededly representative in all material respects of the gelatin container under consideration, except that the container in evidence has hardened since importation, was received in evidence (plaintiff's illustrative exhibit 1) (R. 6). The object in evidence is an oblong, round gelatin container, approximately 2⅛ inches long by nine-sixteenths of an inch in diameter, containing a liquid concededly used, as stated, as a lighter fluid or for removing spots from clothing. The record discloses that, when the liquid is used, the tip of the container is perforated with a pin, the fluid is squeezed out, and the substance is thereupon used for one of the stated purposes. When empty, the container is discarded.

The sole witness in the case was Dr. Theodore Edlich, a practicing physician, who stated that, in the course of his practice, he had administered medicine to patients in both capsules and ampoules. As illustrative of what he considered to be a "capsule," there was received in evidence a large-size gelatin container (plaintiff's illustrative exhibit 2). The witness described it as "about the largest of the capsules that is made * * * that can be administered" (R. 8). This article is approximately 1 inch long and about one-fourth of an inch in diameter. The witness also produced in court a sample of what he considered to be an ampoule. This article was introduced in evidence as plaintiff's illustrative exhibit 3 (R. 13). Dr. Edlich stated that such containers vary in size, the largest being about 8 to 10 inches in length, and, unlike the imported article, are made of glass and must be hermetically sealed. He stated that a capsule "is a gelatine container of a specified size containing medication for human use" (R. 10).

Dr. Edlich testified that the container of the imported merchandise, of which plaintiff's illustrative exhibit 1 is representative, from a medical standpoint is not, because of its size and contents, either a capsule or an ampoule (R. 13).

The Government's own testimony negatives the conclusion that the involved merchandise was shipped into the United States in ampoules as appears from the following testimony contained in the deposition of Mr. Blesser, defendant's exhibit A:

Q. 5. Does your firm now, or has it ever manufactured ampoules of gelatin, as well as of glass?—A. No, we never manufactured ampoules of any type.

Q. 6. Does your firm now, or has it ever manufactured articles of gelatin, which, based on your experience in the field, you consider to be similar to am-

poules? —A.   We manufactured a capsule in the same form and shape as ampoules, but which could not be used for the same purpose.   An ampoule is specifically used for holding aquaes solutions and can be sterilized; in other words, the capsule will not hold aquaes solutions and cannot be sterilized.

\*          \*          \*          \*          \*          \*          \*

Q.   10.   Based on your experience and knowledge of the trade, are articles which, if made of glass, would be termed ampoules, nevertheless ampoules even though made of gelatin?—A.   No.

This testimony really reinforces the conclusion reached in the incorporated case which is controlling on the question of what constitutes an ampoule.   See definitions quoted in 35 Cust. Ct. 269 at pages 270–271.   We must find, therefore, that the importation was not contained in an ampoule or in a form similar thereto.

Finally, was the importation contained in a capsule or a form similar thereto?   In our quest for a definition of the term "capsule," we have been unable to find any pertinent explanation of a capsule other than that applicable to the pharmaceutical and medical fields. · Webster's New International Dictionary, second edition, unabridged, 1954, defines a capsule as used in the fields of anatomy, zoology, bacteriology, botany, chemistry, and medicine.   Obviously, the only two definitions which might have any application here are those relating to chemistry and medicine.   That dictionary gives the following definition under the word "capsule," subdivision 7:

> *Chem.* a Formerly, an earthenware saucer for roasting or melting samples of ores, etc.; a scorifier.   b A small shallow cup of porcelain, platinum, glass, or other material.

Clearly, plaintiff's exhibit 1 does not fall under either of these definitions.   That leaves as the only applicable definition that under medicine, which reads:

> **capsule,** *n.* \* \* \* **8.** *Med.* A small cylindrical or spherical container of ·soluble or digestible material, usually gelatin, in which nauseous or acrid doses are enclosed to be swallowed.

In the case of *Marks Lissberger & Son* v. *United States,* 49 Treas. Dec. 269, T. D. 41363, it was held that a gelatin container, 2⅝ inches long and three-fourths of 1 inch in diameter, was not a capsule capable of being swallowed because, said the court, a capsule is "A small cylindrical or spherical envelope of digestible material in which nauseous or acrid doses are inclosed to be swallowed."

We are not unmindful of the case of *Bush & Co. (Inc.)* v. *United States,* 14 Ct. Cust. Appls. 345, T. D. 41971, in which a fertilizer in tablet form was held to be classifiable under paragraph 23 of the Tariff Act of 1922 as a chemical.   In that case, the court indulged in the presumption that the fertilizer in question was a chemical because

there was no evidence to the contrary. Among other things, the court said:

> * * * But there is no reason, that occurs to us, why chemicals which are not intended for medicinal purposes may not be manufactured into any of such forms.

Such a statement was *dicta* because the only form involved was that of a tablet, and surely a careful consideration of the applicability of an ampoule as a container for other substances than medicinals or drugs would have led the court to a different conclusion. In our opinion, research on the question of what constitutes a capsule would likewise have caused the court to make a different finding. This view is strengthened by the testimony of Dr. Edlich in the incorporated case.

Finally, we come to the question of whether the imported petroleum distillate was enclosed in a container similar in form to a capsule. The word "similar" is defined in Webster's New International Dictionary, second edition, unabridged, 1954, as follows:

> **similar** * * * **1.** Nearly corresponding; resembling in many respects; somewhat like; having a general likeness. * * *

In the case of *United States* v. *R. W. Cramer & Co.*, 21 C. C. P. A. (Customs) 379, T. D. 46911, our appellate court adopted such a definition, and, in the case of *Plant Products Corporation* v. *United States*, 44 C. C. P. A. (Customs) 183, C. A. D. 658, the appellate court followed the definition in the *Cramer* case, *supra*, but gave the definition the following broad application:

> The quoted definitions set forth the common or ordinary meaning of the word "similar" which is to be applied in classification cases such as the instant one, but it is clear that they allow a wide range in interpretation. The only thing they establish with certainty is that similar articles must be alike in some respects and different in others. The degree may vary from "resembling in many respects" to being merely "somewhat like" or "like in quality, nature, degree, purpose, or other characteristics." It is evident, therefore, that no hard and fast rule can be laid down, but that the exact degree of likeness required to constitute similarity in any particular case must be a matter of opinion based on consideration of the particular circumstances involved.

In the instant case, it would appear that the only common characteristic between a capsule, as hereinbefore defined, and the container of the petroleum distillate under consideration is that they are both composed of gelatin. It is clear from the testimony in this case, however, that the gelatin container before the court could not be used, because of its size, as a capsule is used for the administration of medicine to a human being. The involved gelatin container could not, therefore, be said to conform to the definition of "Nearly corresponding; resembling in many respects; somewhat like; having a general likeness." Under the circumstances in this case, we are of the opinion

that the involved container is not a form similar to a capsule in the tariff sense as the term "capsule" is used in paragraph 23 of the tariff act.

We are, therefore, of the opinion and so hold that the merchandise as imported is not a chemical or similar substance in the tariff sense under the terms of paragraph 23 of the Tariff Act of 1930, nor is it contained in an ampoule or a capsule or a form similar thereto. The importation is properly free of duty under the provisions of paragraph 1733 of the Tariff Act of 1930 for "all distillates obtained from petroleum * * * not specially provided for," as claimed. The protest is, therefore, sustained and judgment will be entered accordingly.