(C.D. 4278)

E. Dillingham, Inc. *v.* United States

---

United States Customs Court, Third Division

(Decided September 30, 1971)

*Sharretts, Paley, Carter & Blauvelt* (*Gail T. Cumins* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Owen Rader, Frederick L. Ikenson*, and *Susan Cassell*, trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise involved in this case consisted of six papermakers' felts imported from Canada through the port of Alexandria Bay which were classified as clothing for papermaking, printing or other machines, in the piece or as units, not specially provided for, of textile materials: of wool: woven, under item 358.30, TSUS, and duty assessed on the full value of the merchandise at 37.5 cents per pound, plus 15 per cent ad valorem. The plaintiff does not question the rate of duty assessed, but claims the merchandise was classifiable under item 806.20, TSUS, as "articles exported for repairs or alterations" with duty assessable only on the alterations, namely the processing in Canada (needling). At the trial plaintiff amended its protest to claim alternatively under item 807.00, TSUS, as an "assembly" of American components, with duty upon the imported article, less the cost of the products of the United States.

Papermakers' felt is a textile fabric used on a paper machine as a continuous belt to convey the paper, remove water and impart surface character to the paper. Each felt is custom made with the characteristics of length, width, porosity, absorbency and weave pattern all varying according to the requirements of the customer.

Exhibit D (fiber), which plaintiff submitted with its protest, and plaintiff's exhibit 3 (the base fabric) introduced at the trial, are examples of the merchandise shipped to Canada. Exhibit D is a blend of wool and synthetic fibers. Exhibit 3, as described by plaintiff's witness, is an unfinished papermakers' felt. These are, according to plaintiff, the "components" which were shipped to Canada for further processing because the Huyck Felt Company did not have a wide enough machine in the United States to complete the job according to its customer's specifications.

The base fabric was woven on a loom at a United States plant to meet the customer's needs, varying in its construction according to the kind of paper to be produced, the size of the paper machine, chemicals to be used and paper finish desired.

When the base fabric and the fiber blend were received in Canada they were subjected to a process known as needling. The base fabric was in condition to be needled in the state in which it was received from the United States, but the fiber blend had to be subjected to further processing. The fiber blend was received in bulk and opened by an instrument known as a wool opener which fluffed the fibers. Then wool oil was added and the fibers were carded on a carding machine. This machine delivered the fibers in sheets of uniform density. (See exhibit E attached to the protest.) The effect of this processing is to straighten and parallelize the fibers.

Four layers of this web were needled to the base fabric on a needle loom, which entails a bottom beam and an upper structure containing a needle beam. The needles have rows of barbs on two edges so that as the needle beam is lowered and raised it punches the fibers into the base fabric. After needling, the felts still required further processing in the United States, including washing, trademark insertion, treatment with chemicals and singeing of the surface.

If, after needling, the merchandise was disassembled the fibers would no longer be in the form of a batt (uniform density layered fibers) and the base fabric would be slightly damaged. The needling process has, also, changed the degree of absorbency and porosity of the base fabric and left it slightly narrower.

Counsel for the parties have addressed themselves to three issues in the following order:

1. Did the processing (needling) of the felts in Canada constitute an alteration under item 806.20, TSUS?

2. If the court finds that the processing in Canada of the papermakers' felts was not an "alteration," did the needling of fiber into a fabric base constitute an assembly under item 807.00, TSUS?

3. In the event the court finds that the processing in Canada constituted either an alteration or an assembly, were the pertinent Customs Regulations complied with?

The court is of the view that the question of whether pertinent Customs Regulations were complied with should be decided first. There is no need to discuss the pros and cons of alteration and assembly, if in fact the court does not have jurisdiction because of some procedural defect.

> "Before exportation of any article to be subject on return to the United States to duty on the value of repairs, alterations, or processing effected abroad as provided for in item 806.20 . . ., Tariff Schedules of the United States, a declaration and application shall be filed in duplicate on Customs Form 4455 by the owner or exporter with the collector of customs or appraiser of merchandise at a time before the departure of the exporting conveyance which will permit an examination of the article." Customs Regulation § 10.8(d).

There is a certificate of registration at the bottom of the application which must be signed by a customs official certifying that he has found the articles to be as described by the owner. Customs Regulation § 10.8(j).

A certificate of registration covering the fabric portion of the "needled" felts was never filed, nor was there any evidence as to why it was not filed.

The owner's declaration and the certificate could be filed after entry provided there is an affirmative showing by plaintiff that *the failure to file the document* (Form 4455) *was not due to willful negligence or fraudulent intent*. Customs Regulation § 10.112.

There was no evidentiary showing that this document was entitled to the privilege of late filing.

The collector could waive compliance with registration requirements if he was satisfied the failure to comply was due to inadvertence, mistake or inexperience and not to negligence or bad faith. Customs Regulation § 10.8(k).

No evidence was offered which would make this regulation applicable. There was a letter in the official file referring to the processing in Canada as ". . . this operation of assembling this fiber to these felt bases . . . ," and requesting a waiver. It contains no stamp or markings showing that it was received by customs, however, the papers in the official file were moved into evidence by government counsel on December 10, 1968, and this letter was among the official papers (R.13). There was no testimony or explanation as to how this letter got into the file. There was no stamp or notation on the letter indicating "Record of exportation waived." Mr. Dartnell, import specialist at Alexandria Bay, testified that he did not know how the letter requesting the waiver got into the file; that such letters usually come to his attention for disposition, but this letter did not.

Since there was no compliance with the above mentioned mandatory procedural requirements of the Customs Regulations, and there

was no waiver by the district director, the protest claim of "alterations" under item 806.20, TSUS, should be overruled for failure of plaintiff to satisfy these conditions precedent to entry upon payment of duty on the alterations only. *H. F. Keeler* v. *United States*, 45 CCPA 67, C.A.D. 675 (1958); *Page & Jones* v. *United States*, 26 CCPA 124, C.A.D. 5 (1938); *Indianapolis Machinery & Export Co., Inc.* v. *United States*, 42 Cust. Ct. 137, C.D. 2076 (1959).

It is noted that plaintiff's protest before trial claimed the rate of duty applicable only to "alterations" under item 806.20 TSUS. The protest attached and incorporated by reference an alleged protest of the parent corporation (not the ultimate consignee). This incorporated document sets forth extensive facts and contentions, and seeks classification of the imported felts under TSUS item 807.00 under the theory that the felts constitute articles "assembled" abroad with American components. Although the incorporated document does not amount to a protest cognizable in this court, its fact allegations are the measure of the facts relied upon by the protestant to sustain its item 806.20 claim.

The plaintiff's exhibit 11, Shippers Export Declaration, stated the six woven base fabrics were being sent to Canada for "assembly" operation of needling. The Form 4455 application for certificate of registration for three bales of fiber states the merchandise was being exported "To be assembled to woven base fabrics . . . . Assembly achieved by fiber blend." Thus the facts and contentions incorporated in the protest and the proofs offered at the trial do not conform to the protest claim for "alterations" and said protest claim is overruled for this reason also.

The plaintiff has met the procedural requirements for a protest claim under item 807.00 TSUS. So, the issues on the merits are whether the involved components meet the requirements of item 807.00, TSUS, and whether they have lost their identity in the imported article. The answer to the first question is in the negative and to the second question is in the affirmative.

At the time of exportation the massed fibers are not in a condition ready for assembly without further fabrication, and plaintiff's witness McEwan said as much (R.26, 36). The fibers must be sorted, oiled, carded, and laid out in mats before they are ready for the assembly operation of being needled into the fabric. And these steps take place in the foreign country. The fiber mat which was the product of the carding and not the individual fibers constitutes one of the components of the needled felt. The oiling and opening operations also go beyond the scope of being merely incidental operations.

As for the fabric, while it is ready for the assembly operation in its condition as exported, it is completely obscured from view after the

assembly operation is completed, as the result of impregnation of the fabric with the fiber mats. The components of the assembled felts cannot be separated without considerable damage. Consequently, the assembly operation results in a loss of *physical identity, otherwise*, with respect to the fabric, contrary to the requirements of item 807.00.

The protest is overruled.