(C.D. 4715)

GREEN GIANT CO. *v.* UNITED STATES

Court No. 73-9-02458

(Decided October 3, 1977)

*Glad, Tuttle & White* (*Edward N. Glad* and *T. Randolph Ferguson* of counsel) for the plaintiff.

*Barbara Allen Babcock,* Assistant Attorney General (*Saul Davis* and *Susan Handler-Menahem,* trial attorneys), for the defendant.

FORD, Judge: This action contests the appraisements by the Customs Service of four different sizes of mushroom packs in glass jars imported from the Republic of China (Taiwan) and entered at Milwaukee, Wisconsin and Philadelphia, Pennsylvania. Plaintiff claims the lids or caps on the mushroom jars were of American origin and therefore entitled to free entry by virtue of either item 800.00 or item 807.00 of the Tariff Schedules of the United States.

Plaintiff contends the appraised value of the merchandise should be reduced by an amount equal to the value of the allegedly American-made lids. Additionally, it is plaintiff's position that the dutiable value of the merchandise should not include the cost of certain supervision expenses which are alleged to have occurred after the mushrooms were packed.

The pertinent statutory provisions are as follows:

### SCHEDULE 8. – SPECIAL CLASSIFICATION PROVISIONS

#### Part 1. – Articles Exported and Returned

\* \* \* \* \* \* \*

#### Subpart A. – Articles Not Advanced or Improved Abroad

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 800. 00 | Products of the United States when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means while abroad_____ | Free |

\* \* \* \* \* \* \*

#### Subpart B. – Articles Advanced or Improved Abroad

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 807. 00 | Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting_____ | A duty upon the full value of the imported article, less the cost or value of such products of the United States (see headnote 3 of this subpart) |

Initially, defendant contends this court lacks jurisdiction to review plaintiff's claims under items 800.00 and 807.00 since these are classification provisions and plaintiff's protests are directed solely to ap-

praisement of the merchandise.[1] The mere fact that items contained in TSUS, schedule 8, are referred to as "Special Classification Provisions" does not limit the provisions in schedule 8 to classification. Not all provisions of schedule 8 are directly concerned with the classification and rate of duty of imported merchandise. Items 806.20, 806.30 and 807.00 *supra*, by the very nature of the language utilized therein, relate directly to valuation of merchandise claimed to be entitled to treatment as American goods returned. The crucial determination which the court must make is whether the primary function served by the item numbers of schedule 8 in question is to set the rate of duty of the imported merchandise, or to define the method for ascertaining its dutiable value. If the latter function predominates, a protest against the customs official's appraisement decision is sufficient to confer jurisdiction over the schedule 8 claim upon this court.

Applying the preceding analysis to the facts in the case at bar, the court finds that item 807.00, by its terms, sets forth the procedure for ascertaining the dutiable value of imported goods containing American-made components. Therefore, a protest against the customs official's appraisement decision confers jurisdiction upon this court over the plaintiff's item 807.00 claim.

Item 807.00 does not attempt to establish the rate of duty for merchandise subject to its provisions. In the instant case the classification of the merchandise, which prescribes the rate of duty, is governed by item 144.20 TSUS. Item 807.00 specifically sets forth the method for determining dutiable value by providing for the imposition of:

> A duty upon the full *value* of the imported article, less the *cost or value* of such products of the United States. [Emphasis added.]

The applicability of item 807.00 *supra* to the instant case is further evidenced by headnote 3(b) of schedule 8, part 1, subpart B, which provides as follows:

> 3. Articles assembled abroad with components produced in the United States.—The following provisions apply only to item 807.00:
>
>   \*     \*     \*     \*     \*     \*     \*
>
> (b) The duty on the imported article shall be at the rate which would apply to the imported article itself, as an entirety *without constructive separation* of its components, in its condition as imported if it were not within the purview of this subpart. If the imported article is subject to a specific or compound rate of duty, the total duties shall be reduced in such proportion as the *cost or value* of such products of the United States bears to the *full value* of the imported article. [Emphasis added.]

---

[1] Under 28 U.S.C. § 2632(d), if the plaintiff contests solely the customs official's decision in appraising the value of the imported articles, it may not thereafter raise questions dealing with the classification and rate of duty in its complaint, or at trial. *E.g., C. L. Hutchins & Co., Inc., et al.* v. *United States*, 67 Cust. Ct. 60 C.D. 4252, 331 F. Supp. 318 (1971).

In each of the three protests filed concerning the instant merchandise, the basis of the dispute was stated as follows:

> As to the appraised value of said merchandise, it is claimed that the proper dutiable value is the entered .value without the addition of the value of the American made lids * * *.

Though item 807.00 is not specifically mentioned, plaintiff's claim is precisely the type which would be raised under this item. As such, the protest was sufficient to inform customs of. the nature of the plaintiff's item 807.00 claim. *Chas. Kurz Co.* v. *United States*, 57 Cust. Ct. 84, C.D. 2734 (1966).

With respect to the plaintiff's claim under item 800.00, it may be noted this item speaks in terms of entry free of duty, rather than of a reduction in dutiable value. It is unnecessary, however, for the court to resolve this question, for application of item 807.00 to the present case preempts reliance upon item 800.00.

Prior to the enactment of TSUS in 1963, no express tariff provision existed for imports containing American components. Under paragraph 1615(a) of the Tariff Act of 1930, as amended, which was identical to item 800.00 in all respects here relevant, American components in foreign articles were accorded free entry if they could be "constructively segregated" from the overall article without injury to themselves or the article as a whole. *C. J. Tower & Sons.* v *United States*, 33 Cust. Ct. 14, C.D. 1628 (1954). *See also* United States Tariff Commission, *Economic Factors Affecting the Use of Items 807.00 and 806.30 of the TSUS*, Report to the President on Investigation No. 332–61, at pp. 15–20 (TC Publication 339, Sept. 1970).

In the United States Tariff Commission's Tariff Classification Study of 1960, which accompanied the then proposed TSUS, the Commission criticized the constructive segregation doctrine as applied to foreign articles containing American components. The Commission stated:

> * * * [T]here is no logic to attributing the labor costs involved in assembly exclusively to foreign parts, nor is there any logic in holding that assembly operations do not advance or improve the component parts assembled therein. Such component parts reach their ultimate value only when they have been assembled into an article where they can in fact perform the function for which they were designed and made.
>
> The Bureau of Customs, in numerous rulings applying the principle of [*C. J. Tower & Sons* v. *United States, supra*] C.D. 1628, has allowed free entry to American-made components assembled into foreign articles if, "under the theory of constructive segregation," the components are "capable of being identified and removed without injury" to themselves or to the articles into which they have been assembled. * * *

Whether or not añ American component can be separated from a foreign article "without injury" to either is an unrealistic and arbitrary condition upon which to predicate partial exemption from duty.

\* \* \* \* ⁣* \* \*

In the circumstances, item 807.00 continues the substance of the practice but not under the theory that there has been no advancement or improvement. On the contrary, the provision and its related headnote (headnote 3 to subpart B) logically assume that there has been an advancement or improvement, but limits the extent of the advancement or improvement to that which is brought about solely by the act of assembly. \* \* \* [Tariff Classification Study, Schedule 8, at pp. 13–15 (1960).]

The effect of item 807.00 has been "to solidify the demise of the 'constructive segregation' doctrine" in cases such as the one presently before the court. *United States* v. *Baylis Bros. Co.*, 59 CCPA 9, C.A.D. 1026, 451 F.2d 643 (1971). Item 807.00 makes unnecessary the constructive segregation of the American components contained in foreign merchandise, thus obviating the need to rely upon the fiction that these components were not advanced in value by means of assembly into the foreign article.

Defendant further contends the subject merchandise is ineligible for a reduction in dutiable value because plaintiff failed to comply with the applicable regulations of the Secretary of the Treasury for American goods returned. These regulations were promulgated pursuant to several express provisions of TSUS, notably general headnote 11, and headnote 1 to schedule 8, which provide:

General Headnotes and Rules of Interpretation

\* \* \* \* \* \* \*

11. Issuance of Rules and Regulations. The Secretary of the Treasury is hereby authorized to issue rules and regulations governing the admission of articles under the provisions of the schedules. The allowance of an importer's claim for classification, under any of the provisions of the schedules which provide for total or partial relief from duty or other import restrictions on the basis of facts which are not determinable from an examination of the article itself in its condition as imported, is dependent upon his complying with any rules or regulations which may be issued pursuant to this headnote.

*Schedule 8 headnote:*

1. The provisions of this schedule are not subject to the rule of relative specificity in headnote 10(c) of the General Headnotes and Rules of Interpretation, and, except as provided in headnote 3 to part 1 of this schedule, any article which is described in any provision in this schedule is classifiable in said provision if the conditions and requirements thereof and of any applicable regulations are met.

Plaintiff does not contend that a physical examination of the subject merchandise should have indicated to the customs officials that the caps or lids were American made. Therefore, in order to procure free entry for the caps, it was incumbent upon the plaintiff to comply with all applicable regulations or establish that compliance has been waived or is impossible. *See, e.g. Maple Leaf Petroleum, Ltd. v. United States,* 25 CCPA 5, T.D. 48976 (1937).

Both parties apparently agree that the relevant regulations in effect at the time of the instant importations were found in 19 C.F.R. §10.1(a) (1971). This section provided in pertinent part:

### ARTICLES EXPORTED AND RETURNED

§ 10.1 Domestic products; requirements on entry.

(a) *Except as otherwise provided for in this section* or in § 10.2, the following documents shall be filed in connection with the entry of articles claimed to be free of duty under schedule 8, part 1, Tariff Schedules of the United States:

(1) A declaration by the foreign shipper in substantially the following form, if the value of the returned articles exceeds $500:

\* \* \* \* \* \* \*

(2) A declaration of the owner, importer, consignee, or agent on customs Form 3311.

(3) A certificate, customs Form 4467, of the collector of customs at the port from which the merchandise was exported \* \* \*. [Emphasis added.]

This court is of the opinion, however, that the Secretary of the Treasury has "otherwise provided." A thorough review of 19 C.F.R. § 10.1 (1971) indicates that § 10.1(g), and not § 10.1(a), is the regulation with which the plaintiff had to comply in order to qualify for partially free entry under item 807.00. Section 10.1(g) provides as follows:

### ARTICLES EXPORTED AND RETURNED

§ 10.1 Domestic products; requirements on entry.

\* \* \* \* \* \* \*

(g) The following documents shall be filed in connection with the entry of articles claimed to be partially exempted from duty under item 807.00, Tariff Schedules of the United States, as amended:

(1) A declaration by the person who performed the assembling operations abroad, in substantially the following form:

I, _____, declare to the best of my knowledge and belief that the _____ were assembled in whole or in part from components, as listed and described below, which were produced in the United States.

List and description of components:

| Marks or identifica-<br>tion numbers | Description of<br>component | Quantity |
| --- | --- | --- |
| | | |
| | | |
| | | |

| Unit value at time and<br>place of export from<br>United States | Port and date of export from<br>United States |
| --- | --- |
| | |
| | |

Description of operations performed abroad on the U.S. components including assembling and all other operations.

_____

_____

_____

| (Date) | (Signature) |
| --- | --- |
| | (Capacity) |
| | (Address) |

(2) An endorsement of the owner, importer, consignee, or agent, in substantially the following form:

I declare to the best of my knowledge and belief that the (above) (attached) declaration of _____ is correct in every respect.

| (Date) | (Signature) |
| --- | --- |
| | (Capacity) |
| | (Address) |

(3) If the customs officer concerned is reasonably satisfied because of the nature of the articles or production of other evidence, for example, pertinent business records or copies of shipper's export declarations, that the components are products assembled in such circumstances as to meet the requirements of item 807.00, he may waive the document provided for in subparagraphs (1) and (2) of this paragraph.

Prior to January 17, 1968, the parties' reliance upon section 10.1(a) of the regulations would have been appropriate, since the general requirements of this regulation were applied to all claims for free entry under part 1 of schedule 8, including item 807.00, until this date. However, on January 17, 1968, the Secretary of the Treasury promulgated regulation 10.1(g) to specifically set forth the docu-

mentary proof required for entry under item 807.00. 2 Cust. Bull. 53, T.D. 68–26, 33 F.R. 567 (1968). Substantiation of this position is contained in the United States Tariff Commission report entitled "Economic Factors Affecting the Use of Items 807.00 and 806.30 of the TSUS" *supra,* wherein the following comment was made:

> After the implementation of the TSUS in 1963, no specific regulations were issued with respect to the administration of the provisions of item 807.00. Rather, customs officers were informally advised to adapt section 10.1 of the Customs Regulations, relating to American goods returned without advancement in value. It was not until January 1968 that subsection (g) was added to section 10.1, specifically providing for the documentary proof to be filed in connection with the entry of articles containing U.S. fabricated components claimed to be exempt from duty under item 807.00.[2]

Plaintiff has not attempted to satisfy the document requirements of section 10.1(g). Compliance with the requirements was not waived by customs officials. Since compliance with all applicable regulations is mandatory, and an absolute precondition to recovery in this court, plaintiff's failure to satisfy section 10.1(g) bars its claim under item 807.00. *Maple Leaf Petroleum, Ltd.* v. *United States, supra; Mine Safety Appliances Company* v. *United States,* 36 Cust. Ct. 277, C.D. 1786 (1956).

Even if the court were to consider that compliance with section 10.1(a) of the regulations might constitute substantial compliance with section 10.1(g), I find such a position, especially with respect to the instant plaintiff, to be without merit.

The necessary documents under section 10.1(a), while containing much information which would be relevant under section 10.1(g), nowhere require a declaration of the person performing the assembly operations involving the American components describing the actual work done. This description enables the customs official to determine whether the terms of item 807.00 have been satisfied. It is the central, most important requirement contained in section 10.1(g). Since such a declaration is unnecessary under section 10.1(a) of the regulations, compliance with said section would not constitute substantial satisfaction of section 10.1(g).

Assuming arguendo that compliance with section 10.1(a) would suffice, the record clearly indicates plaintiff has not substantially complied with this section. None of the documents required by section 10.1(a) were filed either at the entry or the liquidation of the subject merchandise. Plaintiff's initial attempt at compliance occured when its counsel offered two sets of the documents, the shipper's declarations

---

[2] This court's conclusion that 19 C.F.R. §10.1(g) (1971) is the regulation applicable to requests for item 807.00 treatment is further confirmed by developments in the customs regulations subsequent to the date of the instant importations. *Compare* 19 C.F.R. §10.1 (1976) *with* 19 C.F.R. §§10.11–10.24 (1976).

and customs 3311 forms, into evidence at the trial of this case.[3] It is urged by plaintiff that this constituted timely compliance with section 10.1(a) by virtue of the provisions of section 10.112 of the regulations, 19 C.F.R. §10.112 (1971), which provided:

§10.112 Filing free entry documents after entry.

Whenever a document, form, or statement required by regulations in this part to be filed in connection with the entry is not filed at the time of the entry or within the period for which a bond was filed for its production but failure to file it was not due to willful negligence or fraudulent intent, such document, form, or statement may be filed at any time prior to liquidation of the entry or, if the entry was liquidated, before the liquidation becomes final.

It is apparent that plaintiff misconceives the thrust of regulation 10.112 since it contends defendant has not demonstrated that the five-year delay in filing the two sets of documents was due to willful negligence or fraudulent intent and, therefore, submission at the trial was timely. Effective late filing of entry documents under this regulation is a privilege to which an importer becomes entitled only when the importer *affirmatively established* its failure to file in a timely manner was not due to willful negligence or fraudulent intent. *F. W. Myers & Co., Inc.* v. *United States*, 72 Cust. Ct. 133, C.D. 4515, 374 F. Supp. 1395 (1974); *F. W. Myers & Co., Inc.* v. *United States*, 70 Cust. Ct. 202, C.D. 4431, 360 F. Supp. 429 (1973), *appeal dismissed*, 61 CCPA 121 (1973); *E. Dillingham, Inc.* v. *United States*, 67 Cust. Ct. 226, C.D. 4278 (1971), *modified*, 60 CCPA 39, C.A.D. 1078, 470 F.2d 629 (1972). The burden of proof is on plaintiff, not the defendant.

Plaintiff's evidence was insufficient in this regard. None of the three witnesses who testified for plaintiff alluded to the fact that the documents were first proffered at trial, at least five years after the importations occurred. There was no evidence offered to explain the long delay. Under these circumstances, plaintiff may not take advantage of the late-filing privilege contained in regulation 10.112. Consequently, plaintiff has not complied with section 10.1(a) or 10.1(g) of the regulations. Based upon the record as made, plaintiff's claims under items 800.00 and 807.00 must, therefore, be dismissed.

The next issue for consideration is whether the dutiable value of the merchandise should be reduced by the value of certain supervision costs amounting to $0.05 per case of packed mushrooms. Plaintiff maintains these costs were incurred during "quality assurance" inspections of the merchandise after it had been completely manu-

---

[3] The plaintiff produced no certificates of exportation whatsoever. *See* 19 C.F.R. §10.1(a) (3) (1971). The plaintiff contends that it was relieved of the responsibility of filing these documents by virtue of the doctrine of impossibility. *See, e.g., United States* v. *Coastwise Steamship & Barge Co.*, 9 Ct. Cust. Appls. 216, T.D. 38047 (1919); *Nanco, Incorporated* v. *United States*, 40 Cust. Ct. 366, C.D. 2007 (1958). In light of the disposition of this case, it is unnecessary to address this contention.

factured by the Taiwanese packers and immediately prior to its actual shipment to the United States. Quality assurance, argues the plaintiff, is distinguishable from "quality control," which occurs during the manufacturing process, and is admittedly dutiable as a part of export value.

Defendant's main response to this contention is that the "separability rule" [4] precludes a reduction in the dutiable value of the merchandise. This court finds it unnecessary to consider the issue of separability as plaintiff has failed to establish that its supervision costs were incurred solely as an incident to a post-manufacture inspection of the merchandise.

Testifying for the plaintiff with respect to the invoiced supervision costs was Marshall Evans, presently the plaintiff's coordinator of international production, and from October 1969 until October 1970 the manager of plaintiff's Far East operations. Mr. Evans testified that "[s]upervision cost is an estimated cost of the operation [of Green Giant] in Taiwan * * *." (R. 68.) In commenting upon the nature of that operation, the witnesss explained:

> We maintain a Taipei office with a manager of Far East operations, with a manager and with a secretary. And we also maintain a quality control laboratory from which our assistants work for the specific work done at the plants. [R.69.]

Though Mr. Evans admitted the invoiced supervision costs were "estimated," he maintained they were for plaintiff's final inspection after manufacture was complete, and immediately before shipment. Mr. Evans' earlier testimony, however, clearly indicates plaintiff's inspection and other activities encompassed the entire manufacturing process. At one point, he stated:

> * * * one of the aspects in which we must operate is quality control. And we have specifications that have to be met. And we have our own people over there who do the inspecting *during processing* and after processing. * * * [R.33; emphasis supplied.]

During Evans' cross-examination, the following colloquy occurred (R.50):

> Q. You mentioned that you have representatives going to the factories of the various packers?—A. Yes.
> Q. How many times in a year did they go to these factories?—A. Well, two representatives rotated between ten factories.
> Q. You didn't answer my question. Let's take number one.

---

[4] Our appellate court in *United States* v. *H. M. Young Associates*, 62 CCPA 20, 23, C.A.D. 1138, 505 F. 2d 721, 724 (1974) restated the separability rule in appraisement cases as follows:

If ex-factory prices and other charges are separately stated on the invoices and the appraiser's finding of value is expressed in terms of the invoice unit prices, plus the questioned charges, the appraisement is deemed to be separable. * * * Under the rule * * * a party to a reappraisement proceeding may challenge one or more of the elements entering into an appraisement, while relying upon the presumption of correctness of the appraiser's return as to all other elements, whenever the challenged items do not disturb the effect of the remainder of the appraisement. * * *

How many times a year did they go to these ten factories?— A. A year or during the pack?

Q. Would you explain the difference? What do you mean by "during the pack"?—A. *During the pack these people were continually, long days going to the ten different factories.* [Emphasis supplied.]

Q. What do you mean by during the pack?—A. About December 1st until April, until the month of April.

Q. That's when they [5] were actually, physically packing the mushrooms?—A. Yes.

This testimony establishes plaintiff's operation in Taiwan included significant "quality control" activity in addition to a final preshipment inspection. Plaintiff's employees or agents were present in the packing factories during the actual "manufacture" of the finished product in order to render technical assistance and other advice and control.

In *International Fashions* v. *United States*, 64 CCPA 35, —, C.A.D. 1180, 545 F.2d 138, 140 (1976), our appellate court held the costs of an inspection service which permeates the entire manufacturing process are dutiable as part of export value.

Plaintiff having failed to demonstrate which portion of its invoiced supervision costs was attributable to its final inspection, as opposed to inspection and control during the manufacturing process, has not sustained its burden of proof. The presumptively correct appraisements of the customs officials must therefore be sustained.

Judgment will be entered accordingly.

(C.D. 4716)

CORNING GLASS WORKS *v.* UNITED STATES

---

[5] It is clear from the context in which it was used that the pronoun "they" in this sentence refers to the Taiwanese packers, and not to plaintiff's representatives at the factories.