**F. W. MYERS & CO., INC.**

v.

**UNITED STATES.**

C.D. 4431; Protest Nos. 67/89525–4165, 68/27935–4284.

United States Customs Court.
June 11, 1973.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz and Irving Levine, New York City, of counsel), for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Martin L. Rothstein and Michael S. O'Rourke, New York City, trial attorneys), for defendant.

FORD, Judge:

The above cases, consolidated for the purpose of trial, involve the proper classification of certain household effects of returning residents. The merchandise is claimed to be free of duty under items 810.10 and 813.10, Tariff Schedules of the United States. At the time of entry an affidavit, customs form 3297 (later modified and numbered 3299), was not submitted to customs pursuant to Part 10 of the Customs Regulations. Said affidavits were filed after the expiration of the bond period, prior to liquidation in protest 68/27935 and subsequent to liquidation and the timely filing of a protest in 67/89525.

Plaintiff contends it has complied with the regulations and is free from willful negligence. Defendant on the other hand claims the regulations were not complied with since Customs Regulation, section 10.112 permits the late filing of such a document only in the absence of willful negligence. It is the position of defendant that not only has plaintiff failed to establish freedom from willful negligence but defendant has affirmatively established such conduct.

The pertinent portions of the statutes and regulations involved provide as follows:

Furniture, and parts thereof, not specially provided for:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

727.55  Other ................................ 20% ad val.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Articles imported by or for the account of any person arriving in the United States from a foreign country:

810.10  Books, libraries, usual and reasonable furniture, and similar household effects, if actually used abroad by him or by him and his family not less than one year, and not intended for any other person, or for sale ................................ Free

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Articles imported by or for the account of any person arriving in the United States who is a returning resident thereof: &ast; &ast; &ast;

813.10      All personal and household effects taken abroad by him or for his account ........ Free

Tariff Act of 1930, as amended:

Sec. 498. *Entry under regulations.*

(a) *Authorized for certain merchandise.*—The Secretary of the Treasury is authorized to prescribe rules and regulations for the declaration and entry of—

\*    \*    \*    \*    \*    \*    \*

(4) Household effects used abroad and personal effects, not imported in pursuance of a purchase or agreement for purchase and not intended for sale;

\*    \*    \*    \*    \*    \*    \*

(6) Articles carried on the person or contained in the baggage of a person arriving in the United States;

(7) Tools of trade of a person arriving in the United States;

(8) Personal effects of citizens of the United States who have died in a foreign country;

\*    \*    \*    \*    \*    \*    \*

(b) *Application of general provisions.*—The Secretary of the Treasury is authorized to include in such rules and regulations any of the provisions of section 484 or 485 of this Act (relating, respectively, to entry and to declaration of merchandise generally).

Customs Regulations:

10.112 Filing free entry documents after entry.—Whenever a document, form, or statement required by regulations in this part to be filed in connection with the entry is not filed at the time of the entry or within the period for which a bond was filed for its production but failure to file it was not due to wilful negligence or fraudulent intent, such document, form, or statement may be filed at any time prior to liquidation of the entry or, if the entry was liquidated, before the liquidation becomes final.

———◆———

The record consists of the testimony of Colleen Piccone, wife of the ultimate consignee in entry F–04417; Armand Speir, the ultimate consignee in entry F–03518; and Robert E. Casey, senior vice president of F. W. Myers & Co., Inc., as well as 13 documentary exhibits received on behalf of plaintiff. Defendant introduced the testimony of Oscar R. Hansen, assistant district director of classification and value for the Ogdensburg customs district, and David H. Reissig, a special agent of United States Customs and five documentary exhibits.

The record establishes that both the Piccone and Speir families were American citizens who had transported their furniture and household effects to Canada and had them returned to the United States after at least one year residency

in Canada. If Customs Regulation, section 10.112 was complied with, the court is of the opinion that the effects returned are of the class entitled to free entry under the provisions of items 810.-10 and 813.10, Tariff Schedules of the United States.

Insofar as Customs Regulation, section 10.112 is concerned, the single issue before the court is whether there was willful negligence on the part of the broker, F. W. Myers, or the ultimate consignees. Suffice it to say the court finds no willful negligence on the part of the ultimate consignees. The balance of the regulation relating to the filing of the missing document prior to liquidation was complied with as to the Speir entry and was filed prior to liquidation becoming final in the Piccone entry since a timely protest was filed which prevents the liquidation from becoming final.

The record establishes that the Piccone effects were entered on October 29, 1964, and are covered by protest 67/89525. The first letter sent by plaintiff was dated June 14, 1966, as indicated by plaintiff's exhibit 1. There was additional correspondence with the Piccone family as set forth in plaintiff's exhibits 1–7 and plaintiff's exhibit 9. The Speir entry was made by plaintiff on September 22, 1965. The first letter sent to the Speirs appears to have been on November 6, 1967, as indicated by plaintiff's exhibit 13. The missing document was filed on November 21, 1967, covering protest 68/27935. Prior to the letter, represented by plaintiff's exhibit 13, the file of plaintiff indicates a letter to the carrier, plaintiff's exhibit 12, dated October 23, 1967, requesting a delivery address since customs forms 3279 and 3299 were returned as undeliverable. Mr. Speir testified he has lived at the same address the household effects were delivered to since his return from Canada and has had, to his knowledge, no problem with mail delivery. In both instances bonds for the production of missing documents were filed and three extensions were granted for each.

Mr. Robert E. Casey testified with respect to the action taken in the two entries involved as well as the general procedure followed in cases where missing documents are involved. The witness stated that it is the general procedure to file bonds in all entries in which documents are missing and that extensions are requested and usually granted by customs. The normal procedure in a case involving missing entries is to utilize the telephone in order to obtain the documents or write to the consignee if the address is known or the carrier if the address is unknown. Mr. Casey testified that when documents are missing at entry, the Myers' office has always acted affirmatively to obtain them. There has been no instance that he was aware of in which his office had "sat back and not tried to get a missing document." Myers furnished kits to the carrier which included customs forms 3297 and 3299 and an instruction sheet, though the time period this procedure was instituted could not be pinpointed.

Mr. Casey explained Myers had a large number of outstanding bonds for documentation of household effects. This was during a period of reorganization of customs and a large backlog of unliquidated entries developed. For the period of 1964–1965, the witness estimated 1000 household effect entries were made. Entries of all kinds totaled 32,850 in 1964 and in 1965 a total of 37,251 entries were made by the Myers' offices at Champlain and Rouses Point.

Mr. Casey further testified that in all instances where they could not comply with the Customs Regulation of filing an affidavit, a bond was posted in an effort to comply. According to the witness, the personal effects entries were referred to them by the trucking companies in accordance with Customs Regulations.

Mr. Oscar R. Hansen was called on behalf of defendant. At the time of the involved importations, the witness was the assistant appraiser at Champlain. Mr. Hansen was familiar with the importations handled by plaintiff and on occasion had discussed the missing docu-

ments problem with Mr. Phillips who was branch manager of plaintiff at Champlain. The gist of such conversations was that if the missing documents were not supplied, the entries would be liquidated dutiable. Mr. Hansen had supervisory authority over the personnel at Rouses Point including the time both missing documents were filed. The personnel handling the filing of papers were clerical grades 4–7 and their job was to date stamp the paper to show receipt. They were generally not empowered to reject any documents tendered by importers. The date stamped on customs form 3297 in entry F 03518 was November 21, 1967, and form 3299 in entry F 04417 was dated May 10, 1971. According to Mr. Hansen the stamping indicated receipt of the documents, not the acceptance of being timely filed pursuant to Customs Regulations.

Mr. David H. Reissig testified as to his investigation of the entries covered by defendant's exhibits D, E and F.

Customs Regulation, section 10.112 was made effective by publication in the Federal Register on March 2, 1960, 25 F.R. 1820. The regulation and purpose of such amendment to Part 10 of the Customs Regulations were published in 95 Treas.Dec. 86, T.D. 55059. The reason was set forth as follows:

The purpose of this regulation is to relieve certain existing restrictions to the filing of free entry documents. It is to the benefit of the public that the regulation be made effective at the earliest possible date. Accordingly, pursuant to section 4 of the Administrative Procedure Act (5 U.S.C. § 1003), it is found that notice and public procedure with respect to this regulation is impracticable, unnecessary, and contrary to the public interest and good cause is found for making the regulation effective upon publication in the Federal Register.

Prior to Customs Regulation, section 10.112, failure to submit the required documents prior to liquidation would constitute a bar to free entry. This was considered in a case involving American goods returned, by the late Judge Johnson in Bertrand Freres, Inc., et al. v. United States, 47 Cust.Ct. 155, C.D. 2296 (1961), wherein the following comment was made:

\* \* \* it has been held that the collector may not waive production of customs Form 3311 and that the filing thereof after entry and after the bonded period does not meet the requirements of the regulations. United States v. Saunders et al., 6 Ct.Cust. Appls. 86, T.D. 35337; Wedemann, Godknecht & Lally (Inc.) v. United States, 60 Treas.Dec. 566, T.D. 45175; J. J. Distributing Co. et al. v. United States, *supra* [40 Cust.Ct. 27, C.D. 1953]; Christian Dior, N. Y., Inc. v. United States, *supra* [40 Cust.Ct. 460, Abs. 61591]; Bluefries New York, Inc. v. United States, *supra* [41 Cust.Ct. 309, Abs. 62133]. The result has been to prevent the allowance of free entry by the court in cases where the merchandise would otherwise have been entitled thereto. Christian Dior, N. Y., Inc. v. United States, *supra*; Bluefries New York, Inc. v. United States, *supra*.

It was obviously to meet this kind of situation that the new regulation was adopted. It does not enlarge the class of merchandise entitled to free entry, since proof that the imported articles in fact fall within the terms of the statute must be presented to the court by evidence or stipulation. What it does do is to make the condition precedent to the vesting of the right of free entry less onerous by extending the time during which the documents may be filed. \* \* \*

■ It is obvious based upon the reason set forth in T.D. 55059, and the position of the court in *Bertrand Freres, supra*, that the new regulation was promulgated for the benefit of the public. A regulation of this type should be liberally construed in favor of the party it was intended to assist.

■ The regulation permits such extension where late filing was not due to willful negligence or fraudulent intent.

Since neither party has addressed itself to fraudulent intent, the question before the court for determination is that of willful negligence.

Insofar as research reveals the term "willful negligence" is alien to customs law. The term, however, has been the subject of a substantial number of cases throughout the United States involving personal injury litigation. The judicial interpretations and the legal authorities on the subject may be considered in determining for customs purposes the meaning of the term "willful negligence." One of the leading authorities, Negligence in the New York Courts by Warren (1940), Vol. 1, § 3.05, in discussing the term "willful negligence" makes the following comment:

> * * * It is clear that for an act to be willful or wanton, intent must be present in some form. It has previously been pointed out, however, that intent is not an element of ordinary negligence.

> In some cases willful or wanton negligence has been regarded as a reckless disregard of the consequences of an act. There is in all of the decisions in which the negligence is spoken of as willful or wanton, an element of that character. The act, however, to be placed in such a category, must be, to a certain extent, at least, deliberate. It is not merely a failure to use care in doing or omitting to do something, but there is a positive act intended by the actor.

> This does not necessarily mean that the actor intended to do harm to the other person. It does mean, however, that he intended to do the act which caused the harm. In this regard there has been some distinction made in some of the jurisdictions between willful and wanton. The former has been said to imply an intent to do injury while the latter does not. * * * [Footnotes omitted.]

Black's Law Dictionary 1186 (1951) gives the following information with respect to this term:

> Willful Negligence. Though rejected by some courts and writers as involving a contradiction of terms, this phrase is occasionally used to describe a higher or more aggravated form of negligence than "gross." It then means a willful determination not to perform a known duty, or a reckless disregard of the safety or the rights of others, as manifested by the conscious and intentional omission of the care proper under the circumstances. Victor Coal Co. v. Muir, 20 Colo. 320, 38 P. 378, 26 L.R.A. 435; Holwerson v. Railway Co., 157 Mo. 216, 57 S.W. 770, 50 L.R.A. 850.

Corpus Juris Secundum, 65 C.J.S. Negligence § 9(1)(c), p. 548, provides as follows:

> The phrase "willful negligence" has been held to be a contradiction in terms, for to say an injury resulted from the negligent and willful conduct of another is to affirm that the same act is the result of two opposite mental conditions, heedlessness and purpose or design. However, "willful negligence" is sometimes defined as being a kind of negligence, and held, at least when the element of willfulness is given a restricted meaning, to be a proper term. The term "willful negligence" is frequently used by the courts, and has come to have a well-understood significance in the law, as meaning something more than simply negligence or even gross negligence, and as indicating a voluntary breach of duty under such circumstances as indicate a reckless or wanton disregard of consequences. It has been defined as that degree of neglect arising where there is a reckless indifference to the safety of human life, or an intentional failure to perform a manifest duty to the public, in the performance of which the public and the person injured had an interest. [Footnotes omitted.]

Under the heading "Definitions" in 65 C.J.S., *supra*, p. 549, it was stated:

> (5) "Willful negligence" involves a deliberate purpose not to discharge some duty, necessary to safety of the

person or property of another, which person owing it has assumed or had imposed on him by operation of law. Or.—Monnet v. Ullman, 276 P. 244, 129 Or. 44.

Further, in 65 C.J.S. Negligence § 9(2)(a), p. 554, under the heading "Essential Elements," the following comment is noted:

In order that one may be held guilty of willfulness or wantonness it must appear that he was conscious of his conduct. Also, in order that an act or omission may properly be characterized as either willful or wanton there must be, on the part of the person sought to be charged, a conscious intent to do or to omit the act in question: an intentional failure to perform a manifest duty. Consequently, mere inattention does not amount to willfulness or wantonness, although it has been said that inadvertent failure to act, when combined with other elements, may furnish a basis on which to predicate wantonness as distinguished from willfulness. [Footnotes omitted.]

American Jurisprudence 2d, 57 Am. Jur.2d, Wilful or Wanton Negligence § 105, makes the following statement:

In using "wilful," it has been said that to constitute wilful negligence the act done or omitted to be done must be intended, or must involve "such reckless disregard of security and right as to imply bad faith." It is recognized that wilful or intentional negligence is something distinct from mere carelessness and inattention, however gross, and consists of a wilful and intentional failure or neglect to perform a duty necessary to protect from harm the person or property of another. * * * [Footnotes omitted.]

It is to be observed that included in the term "willful negligence" by the authorities cited, *supra*, are two elements: (1) intent or a deliberate or conscious and intentional omission to perform some act or duty; (2) reckless disre-

gard of the consequences of the act done or failure to act by the party.

Insofar as the first element is concerned, the record establishes by the action of plaintiff that there was no intentional omission to comply with Customs Regulation 10.112. Plaintiff had posted a bond and requested extension of time. Whether this was for the broker's protection as alleged by defendant or for the protection of its client is immaterial. Based upon the record, such action negates a deliberate or intentional failure to comply with the regulation involved. The record also indicates that over 1000 entries per year of household effects were made by plaintiff during the period involved. Plaintiff was apparently successful in providing the necessary documents in the time prescribed in a large percentage of the entries. As indicated, *supra*, the number of household effects entries were but a small part of the 32,850 entries handled by the Myers' offices at Champlain and Rouses Point for the year 1964, and 37,251 entries made by these offices for the year 1965. Plaintiff issued kits of forms to the trucking companies in order to prevent making an entry with missing documents. In addition, it has been established that this matter was brought to the attention of customs by plaintiff in an effort to solve the problem which appears to have been caused by the large number of such entries. This is set forth in defendant's exhibit A. All of these factors preclude a finding of conscious and intentional omission to perform the necessary act.

The second element, involving a reckless disregard of the act done, defendant contends is established by the pattern of conduct of plaintiff as indicated in defendant's exhibits D, E, and F, covering an investigation of 258 cases of household effects entered by plaintiff. While it is unquestionably true, based upon defendant's exhibits D and E, that the length of time it took plaintiff to contact the ultimate consignee in order to obtain the missing documents constituted an inordinately long period of time, it does not in the opinion of the court

amount to a reckless disregard of the rights of the party. Dilatory procedure would not in itself be sufficient to constitute reckless disregard of the rights of the party. Even if the court were to consider the length of time it took to contact the ultimate consignee to be a result of carelessness or inattention, however gross, it is not tantamount to willful negligence. 57 Am.Jur.2d, Willful or Wanton Negligence § 105; 65 C. J.S. Negligence § 9(2)(a).

In view of the foregoing, the claims for classification under items 810.10 and 813.10 are sustained.

The entries covered by the protests not included in the complaint are hereby dismissed.

Judgment will be entered accordingly.