**MATTEL, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**The UNITED STATES, Appellant,**

v.

**MATTEL, INC., Appellee.**

**Appeal Nos. 79–28, 79–29.**

United States Court of Customs
and Patent Appeals.

June 19, 1980.

<br>

Louise A. LaMothe and Marjorie M. Shostak, Los Angeles, Cal., for Mattel, Inc.; Judy Seder Bardugo and John N. Politis, Los Angeles, Cal., of counsel.

Alice Daniel, Asst. Atty. Gen., Washington, D.C., David M. Cohen, Director, Joseph I. Liebman, Atty. in Charge, Saul Davis, Commercial Litigation Branch, New York City, for United States.

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Associate Judges, and WINNER, Judge.*

MILLER, Judge.

This case is before us on appeal by Mattel, Inc. ("Mattel") and cross-appeal by the Government from the decision and judg-

ment of the United States Customs Court, 475 F.Supp. 683, sustaining Mattel's alternative claim for classification of the involved merchandise under Item 724.25, TSUS, as phonograph records dutiable at 5% ad valorem. Mattel's primary claim, the subject of its appeal, is that the involved merchandise is classifiable as duty free under (1) Item 800.00, TSUS, as U.S. goods returned after having been exported without having been advanced in value or improved in condition while abroad, or (2) Item 807.00, TSUS, as the U.S. goods component of articles assembled abroad, said component not having been advanced in value or improved in condition while abroad except by being assembled.[1] The Customs Service classified the involved merchandise under Item 737.90, TSUS, as toys, and parts of toys, n. s. p. f., other, dutiable at 17.5% ad valorem, the correctness of which is the subject of the Government's cross-appeal. We hold that the involved merchandise is classifiable as duty free under Item 807.00, TSUS, and reverse the decision and judgment below.

## BACKGROUND

The involved merchandise covering 10 entries consists of phonograph records manufactured in the United States which were exported in bulk quantities to Mexico, where they were packaged for retail sale in envelopes and imported into the United States at Los Angeles-Long Beach during the period of August 18–November 21, 1972, in association with talking toy telephones (not in issue here), known and sold as Mattel-O-Phones and Talking Picture Phones, the latter in two styles, depending on the types of records included: Nice Neighbors Talking Picture Phone ("Nice Neighbors Phone"), and Alphabet-Talking Pictures Phone ("Alphabet Phone").[2] The

---

* The Honorable Fred M. Winner, Chief Judge, United States District Court for the District of Colorado, sitting by designation.

1. Under Item 800.00, the goods are duty free; while under Item 807.00, duty is calculated on the full value of the imported assembled article less the cost or value of the U.S. goods component.

2. In the Mattel-O-Phone package five 4-inch records were packed in a manila envelope; in each of the Nice Neighbors and Alphabet phone packages, six 2½-inch records were

records have no hold in the center and possess no use independent from the toy telephones. On the Mattel-O-Phone records appears the legend "©Mattel, Inc. 1964," and on the other records appear the words "Made & Printed in U.S.A."

The Customs Court denied Mattel's primary claim for duty-free classification on the basis of Mattel's failure to timely file free-entry, claim-supporting documents required by Customs Regulation 19 CFR 10.1.[3] Mattel argues that its claims for free entry of the records imported with the Alphabet Phone and the Nice Neighbors Phone are not dependent on compliance with 19 CFR 10.1, because the words thereon provide the factual basis "determinable from an examination of the article[s]" within the exception from compliance provided by 19 CFR 10.1. It also argues that the evidence establishes that from 1968 to 1972 identical records were granted free-entry treatment —"a classification which was dependent on verification by the Customs officials of United States origin or production, without advancement in value or improvement in condition, and without payment of drawback"; and that waiver of documents required by 19 CFR 10.1 was denied only because the import specialist concluded "that neither he nor the District Director had authority to waive documentation requirements [when] the Customs Service was not going to accord duty-free treatment."[4]

Alternatively, Mattel argues that even if the filing of documents specified by 19 CFR 10.1 was required, as determined by the Customs Court, the requirement was satisfied by its tender of the documents to the Customs Court before final liquidation under 19 CFR 10.112, which permits late filing where failure to timely file "was not due to willful negligence or fraudulent intent."[5] With respect to this argument, the Customs Court concluded that Mattel failed to meet its burden of establishing that its failure to timely file the free-entry, claim-supporting documents was not due to willful negligence, adding that—

> the record shows that the failure to timely file was *intentional*, which for purposes of section 10.112, is the legal equivalent of willful negligence.

The Customs Court observed that the Government had conceded that the free-entry, claim-supporting documents may be filed with the Customs Court if there was a showing that the late filing was not due to willful negligence or fraud.

The Customs Court referred to testimony of Mattel's Director of Import-Export Administration that when he and Mattel knew that the Customs Service was not going to allow duty-free treatment to the records,[6] they did not continue to file the free-entry documents required by the regulations, although such documents were filed regarding other components, specific mention of

---

packed in a clear plastic envelope. An appropriate envelope was *stapled to each phone unit.*

**3.** 19 CFR 10.1 requires the filing of the following documents "in connection with the entry of articles claimed to be free of duty under schedule 8, part 1, Tariff Schedules of the United States": foreign shipper's declaration, owner's declaration on customs Form 3311, District Director of Customs' certificate of exportation (customs Form 4467) showing that no drawback, bounty, or allowance has been paid or admitted thereon; and, for classification under Item 807.00, foreign assembler's declaration with owner's endorsement thereon.

**4.** Mattel calls attention to testimony that duty-free treatment of identical records was discontinued in 1972 because the import specialist did

not regard the packaging of the records as an assembly operation, but concluded that the packaging was an advancement in value—a conclusion, Mattel argues, that was overruled by this court's decision in *United States v. Carr & Son, Inc.*, 496 F.2d 1225, 61 CCPA 52, C.A.D. 1118 (1974) (individually-packaged assortments of fish hooks held qualified for duty-free treatment under Item 800.00 TSUS).

**5.** *See F.W. Myers & Co. v. United States*, 70 Cust.Ct. 202, C.D. 4431, 360 F.Supp. 429, *appeal dismissed*, 61 CCPA 121 (1973); *Green Giant Co. v. United States*, 79 Cust.Ct. 61, 70, C.D. 4715 (1977).

**6.** He testified that in 1972 they were directed to pay duty on the records as toy parts under Item 737.90.

the records being omitted;[7] also to testimony of Mattel's Manager of Import-Export Documentation that it was standard operating procedure in 1972 to not file free-entry documents on merchandise that he knew would not be allowed duty-free treatment by the Customs Service. Such evidence persuaded the court to find the *"intentional character"* of the nonfiling of the free-entry documents.

The Customs Court further found that Mattel's constructed cost submissions (Exhibits 15 B, D, E, and F) contained a footnote reading:

> Importer requesting Judicial Ruling that this merchandise is applicable under Items 800.00 or 807.00 T.S.U.S.

Of this, the court said:

> This notice of an intention to seek a judicial ruling . . . shows an intent not to seek a timely ruling by the customs service.

The constructed cost submissions were sent by letter from Mattel to the District Director of the Customs Service for the purpose of assisting in the computation of the estimated duty to be deposited with the entry and covered numerous components in addition to the records—some applicable under Item 800.00, some applicable under Item 807.00, and some, including the records, "Associable Under Various Classifications." Earlier constructed cost submissions listed records as applicable under Item 807.00.

## OPINION

■ Although we are satisfied that substantial evidence supports the Customs Court's finding that the nonfiling of the

free-entry, claim-supporting documents was *"intentional,"* in a nominal sense, we conclude that the Customs Court erred in holding that *"intentional* . . . for purposes of section 10.112, is the legal equivalent of willful negligence."[8]

The Customs Regulations do not provide a definition of "willful negligence." However, in *F.W. Myers & Co. v. United States*, 70 Cust.Ct. 202, C.D. 4431, 360 F.Supp. 429, *appeal dismissed*, 61 CCPA 121 (1973), the Customs Court, after reviewing several authorities,[9] said (at 209, 360 F.Supp. at 435):

> It is to be observed that included in the term "willful negligence" by the authorities cited, *supra*, are two elements: (1) intent or a deliberate or conscious and intentional omission to perform some act or duty; (2) reckless disregard of the consequences of the act done or failure to act by the party.

And further (at 210, 360 F.Supp. at 435–436):

> The second element, involving a reckless disregard of the act done, defendant contends is established by the pattern of conduct of plaintiff . . . . While it is unquestionably true . . . that the length of time it took plaintiff to contact the ultimate consignee in order to obtain the missing documents constituted an inordinately long period of time, it does not in the opinion of the court amount to a reckless disregard of the rights of the party. Dilatory procedure would not in itself be sufficient to constitute reckless disregard of the rights of the party. Even if the court were to consider the length of time it took to contact the ultimate consignee to be a result of care-

---

7. He also estimated that 1,500,000 documents went through his department in 1972.

8. The Customs Court also said that "it is not the function of section 10.112 to relieve an importer from the consequences of its deliberate acts" and appeared to equate "intentional" and "deliberate" for purposes of 19 CFR 1.112, a point with which we do not disagree. However, it is clear that the regulation was promulgated to make the privilege of free entry "less

onerous" by extending the time for filing of claim-supporting documents and, thereby, enabling free entry of merchandise that would otherwise have been excluded from such treatment. *Freres, Inc. v. United States*, 47 Cust.Ct. 155, 159, C.D. 2296 (1961).

9. These included *Black's Law Dictionary*, 65 C.J.S. *Negligence* § 9(1)(c), and 57 Am.Jur.2d *Wilful or Wanton Negligence* § 105.

lessness or inattention, however . . . gross, it is not tantamount to willful negligence.

■ Mattel points out that the Customs Court cited no case in which the concept of "willful negligence" did not include culpability and that the Government's citations,[10] as recognized by the Government itself, all involve a plaintiff's burden of proof (that there was no intent to defraud the revenue of the United States) when a petition for remission of duties under section 489 of the Tariff Act of 1930 was filed. The Government argues that it has established from these citations that the burden of proving freedom from willful negligence "is not fulfilled by simple statements, *in vacuo*, but must be proved by concrete evidence." Fair enough, but, as will be related *infra*, we are satisfied that *positive action* demonstrating absence of willful negligence has been shown here.

We note that in the closely related field of federal income taxation, the Supreme Court has, in cases of both tax felonies and tax misdemeanors, required that there be a bad purpose or evil motive to meet the statutory provision of willfulness. *United States v. Bishop*, 412 U.S. 346, 361, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973); *United States v. Murdock*, 290 U.S. 389, 398, 54 S.Ct. 223, 226, 78 L.Ed. 381 (1933). *But see United States v. McCorkle*, 511 F.2d 482, 485 (7th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975). Although this requirement was stated in the context of criminal statutes, it is nevertheless relevant to the meaning of "willful" in a civil case, which merely requires a lesser burden of proof.

■ With respect to the Customs Court's statement that the footnote in Mattel's constructed cost submissions showed "an intent not to seek a timely ruling by the customs service," it appears that "a timely ruling" had in fact been made when, in 1972, duty-free treatment of records was discontinued by the Customs Service, and that further administrative action would have been futile. Also, there has been no showing by the Government that the customs revenue was, in any way, jeopardized by Mattel's decision, with notice to the Customs Service, to exercise its judicial remedies, or that Mattel had any bad motive or reckless disregard for the Customs Service in failing to file its free-entry, claim-supporting documents with the Customs Service.[11] Indeed, we are persuaded that the notice to the Customs Service was a *positive* action which affirmatively demonstrates the absence of willful negligence.[12]

Accordingly, we hold that, under 19 CFR 10.112, Mattel was entitled to have its free-entry, claim-supporting documents filed with the Customs Court.

■ We note from the record that the Customs Court agreed with Mattel's counsel that, in the event Mattel was determined to have been neither fraudulent nor willfully negligent, the documents would be admitted into evidence and that Mattel would be deemed to have submitted all necessary documentation in support of its Item 800.00 and Item 807.00 claims. Therefore, on the basis of what clearly appears from the record and the exhibits, we further hold that the involved merchandise is classifiable as duty free under Item 807.00, TSUS, as the U.S. goods component of articles assembled abroad, said component not having been

10. *United States v. Fish*, 268 U.S. 607, 612–13, 45 S.Ct. 616, 69 L.Ed. 1112 (1925); *United States v. Kittelson*, 43 CCPA 31, 34–35, C.A.D. 605 (1955); *United States v. Pacific Coast Feather Co.*, 40 CCPA 141, 143, 147, C.A.D. 510 (1953); *United States v. W.J. Westerfield*, 40 CCPA 115, 124–26, C.A.D. 507 (1953).

11. Mattel makes the point that "[i]t is not logical to assume that Mattel would sabotage its own ability to seek judicial review of its substantive claims by failing to type onto the

claim-supporting documents which it filed with the entries in 1972 an additional six-digit number referencing the part number of the phonograph records."

12. The Government argues that proof of freedom from intent to defraud is an easier standard to meet than freedom from willful negligence. Therefore, demonstrating absence of willful negligence *a fortiori* demonstrates freedom from fraudulent intent.

advanced in value or improved in condition while abroad except by being assembled.[13]

The decision and judgment of the Customs Court are *reversed.*

---

**13.** Because of this holding, it is unnecessary to reach Mattel's argument that it was not required to comply with 19 CFR 10.1; also, the cross-appeal by the Government must be dismissed.

