NEWMAN, Circuit Judge,
dissenting.
I agree that the statute and regulations require that the refund claim must be filed within one year of importation. However, the issue here is not the timely filing of the claim for refund; the timeliness of that filing is not disputed. The issue is whether the Customs regulation, 19 C.F.R. § 10.112, that permits later filing of a supporting “document” if certain conditions are met, applies to the Certificate of Origin that is required in order to obtain the claimed refund.
§ 10.112 Filing free entry documents or reduced duty documents after entry. Whenever a free entry or a reduced duty document, form, or statement required to be filed in connection with the entry is not filed at the time of the entry or within the period for which a bond was filed for its production, but failure to file it was not due to willful negligence or fraudulent intent, such document, form, or statement may be filed at any time prior to liquidation of the entry or, if the entry was liquidated, before the liquidation becomes final ...
The Court of International Trade sustained Customs’ ruling that the Certificates of Origin cannot be filed after the year within which the claim was filed, and *918 this court agrees, ruling that the NAFTA statute bars applying Regulation § 10.112 to NAFTA importations. The NAFTA statute is silent as to any such bar.
The NAFTA statute and regulations do not overrule or qualify or even mention this earlier regulation, although this regulation was not obscure, and has been widely applied in Customs transactions.[1] It cannot be presumed that by silence such an important and useful benefit was intended to be eliminated as to Canada and Mexico even as the purpose of the NAFTA is to support and ease trade with Canada and Mexico. It is not likely that the treaty intended, by silence, to remove this flexibility from the NAFTA nations.
The provisions of the NAFTA statute and regulations, with a one-year limitation for filing refund claims, track similar time-limits in other Customs statutes, which are, without dispute, subject to § 10.112. If it were intended that only imports from North American nations would no longer have this flexibility, surely the NAFTA treaty, and the implementing statutes and regulations, would have mentioned it. The court’s opinion recognizes that the legislative history is silent, but nonetheless endorses the silent change in law. Silence cannot cancel and withdraw a long-standing provision of applicable law and recognized procedure.
Ford complied with the one-year filing period for all of the refund applications— with a month to spare. In accordance with § 10.112, the “documents” — the required Certificates of Origin — were filed “prior to liquidation.” Thus the only appropriate inquiry under § 10.112 is whether there was willful negligence or fraudulent intent in the time of filing, for if not, these documents were timely filed.
Precedent is in accord. In Gulfstream Aerospace Corp. v. United States, 981 F.Supp. 654 (C.I.T.1997) an aircraft parts importer sought duty-free treatment of entries that only became eligible for such treatment under the Agreement on Trade in Civil Aircraft after their reclassification by the United States Customs Service. Customs denied the importer’s protest, on the ground that the importer had not filed the required certifying documents simultaneously with parts’ entry summaries. At issue was whether 19 U.S.C. § 1520(c)(1) forgave the late certifying documents if filed prior to liquidation. The Court of International Trade held that the importer was entitled to duty-free treatment under 19 U.S.C. § 1520(c)(1), observing that the remedial nature of § 10.112 provided the proper ground for relief:
At the time [19 C.F.R. § 10.112] was promulgated, Customs stated that the purpose of the regulation was “to relieve certain existing restrictions to the filing of free entry documents.” This regulation provides for the late filing of duty free entry documents or reduced duty documents after entry. The language of 19 C.F.R. § 10.112 does not limit its application to certain documents or exclude certain documents. In addition, Customs did not amend 19 C.F.R. § 10.112 when it promulgated the obligatory language of 19 C.F.R. § 10.183 nor did Customs state that 19 C.F.R. § 10.183 was an exception to the broad remedial effect of 19 C.F.R. § 10.112. Customs promulgated 19 C.F.R. § 10.112 to alleviate onerous filing requirements arising out of the narrow construction of duty entitlements; therefore, 19 C.F.R. § 10.112 should be liberally construed.
*919 Id. at 667 (emphases in original) (quoting Aviall of Tex., Inc. v. United States, 861 F.Supp. 100 (C.I.T.1994)).
Customs distinguishes Gulfstream from this case, arguing that Gulfstream was decided under 19 U.S.C. § 1520(c)(1) (since repealed) and by noting that Ford has not claimed that its failure to timely file the Certificates of Origin was the result of a § 1520(c)(1)-type “clerical error, mistake of fact or other inadvertence.” Customs also argued that § 10.112 cannot apply because the Certificates of Origin were required “at time of’ entry. However, the Gulfstream court resolved any distinction between the phrase “at time of’ entry and “in connection with” entry, concluding: “The Court finds that Customs’ interpretation of the phrase ‘in connection with’ entry has been inconsistent over time, and Customs’ actual practice indicates no intention to create a distinction between this phrase and ‘at time of entry.” Gulf-stream, 981 F.Supp. at 668. Customs’ arguments regarding any significant distinction between “at time of’ entry and “in connection with” entry in the instant case are equally unpersuasive.
The Court of International Trade, in Corrpro I, squarely addressed the issue of whether § 10.112 excuses the late filing of Certificates of Origin for § 1520(d) purposes. See Corrpro Cos. v. United States (“Corrpro I”), 28 CIT 1523 (2004) (not reported in F.Supp.), rev’d on jurisdictional grounds, 433 F.3d 1360 (Fed.Cir.2006). In Corrpro I the importer, Corrpro Companies, challenged Customs’ determination that merchandise was not entitled to duty-free NAFTA treatment. Corrpro did not claim preferential treatment under NAFTA within one year of the date of importation under § 1520(d). However, Corrpro filed protests to Customs’ liquidation under 19 U.S.C. § 1514(a), arguing that the goods were classifiable as free of duty under NAFTA. Adopting the reasoning in Aviall that § 10.112 “does not limit its application to certain documents” and should be interpreted broadly, the court held that § 10.112 applies to NAFTA refund claims: “[T]he Court holds that 19 C.F.R. § 10.112 supersedes 19, C.F.R. §§ 181.31 and 181.32 ... [U]nder [§ 10.112], Corrpro may submit its NAFTA Certificates of Origin, at any time prior to liquidation, barring willful negligence or fraudulent intent in compliance.” Corrpro I, 28 CIT at 1531.
In Corrpro II, this court held that claim-notice documents must be submitted .within § 1520(d)’s one year limit or the Court of International Trade does not have jurisdiction. Corrpro Cos. v. United States (“Corrpro II”), 433 F.3d 1360 (Fed.Cir. 2006); see also Xerox Corp. v. United States, 423 F.3d 1356, 1365 (Fed.Cir.2005) (“[A]n importer cannot use section 10.112 to circumvent the clear mandate of NAFTA and 19 U.S.C. § 1520(d) that allows an importer only one year to file a claim in the first instance for NAFTA treatment.” (emphasis added)).
In both Aviall and Gulfstream the Court of International Trade stated that “ § 10.112 should be liberally construed” over other regulatory provisions. Aviall, 861 F.Supp. at 105; Gulfstream, 981 F.Supp. at 667. In the earlier Ford ruling this court rejected Customs’ position, and remanded for proper application of the NAFTA provisions. Section 10.112 has never been held to be “meaningless” as applied to NAFTA importations, as the majority now holds.
Precedent supports the distinction between late claims-notice documents, which are non-waiveable “jurisdictional requirements,” and the subsequent filing of supporting documents for timely filed claims. Gulfstream cites this distinction, noting “[I]t is clear that the regulation-[§ 10.112] *920 was promulgated to make the privilege of free entry less onerous by extending the time for filing of claim-supporting documents and, thereby, enabling free entry of merchandise that would otherwise have been excluded from such treatment.” Gulfstream, 981 F.Supp. at 667 (emphasis added); Mattel, Inc. v. United States, 67 C.C.P.A. 74, 624 F.2d 1076, 1079 n. 8 (CCPA 1980) (internal quotation omitted).
The majority opinion states that “[t]aken to its logical conclusion, Ford’s argument would permit importers to submit claims under § 1520(d) without any of the required documentation and without regard to the one-year deadline, so long as the required documents were submitted before liquidation.” Maj. Op. at 913 (emphasis added). This is inaccurate. Ford’s argument is that a claim exists when the importer files a request with Customs for a refund of duties and alleges its goods qualify for duty-free treatment. Ford argues that a Certificate of Origin must accompany, but is distinct from, the refund “claim.”
The Court of International Trade correctly acknowledged that this court, in Ford II, distinguished “notice of a party’s § 1520(d) claim” from “the accompanying certificate of origin.” Ford Motor Co. v. United States, 800 F.Supp.2d 1349, 1352 n. 3 (C.I.T.2011). Section 1520(d), working harmoniously with § 10.112, would require claim-notice documents to be filed “within 1 year after the date of importation,” and claim-supporting documents to be filed “before the liquidation becomes final.” (quoting § 1520(d); § 10.112). This consistent interpretation of the statute, regulations and precedent permits the requirements of § 1520(d), § 10.112 and the reconciliation program to legally coexist. See Clark v. Martinez, 543 U.S. 371, 378, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (explaining that a statute “cannot, however, be interpreted ... both [ways] at the same time”); Glover v. West, 185 F.3d 1328, 1332 (Fed.Cir.1999) (explaining that courts must “attempt to give full effect to all words contained within th[e] statute [and] regulation^], thereby rendering superfluous as little of the statutory or regulatory language as possible”).
In entering into the NAFTA, and as ratified and codified, neither the executive nor the legislative bodies nor any historical documentation we have found reflected an intent to remove the benefit of the preexisting general regulatory provision of § 10.112. I have unearthed no hint of an intent to add this burden and rigor to trade with Canada and Mexico. The entirety of this history shows a contrary intent, to facilitate such trade.
This view is reinforced by NAFTA Article 503(c) and the subsequently adopted reconciliation program, in which the filing of Certificates of Origin is waived entirely. The policy reflected in this program reinforces the view that it is incorrect to hold that the NAFTA statute removed, from NAFTA importations, flexibilities in filing claim-supporting documentation and access to § 10.112.
The record shows, and Customs does not deny, that Ford worked diligently to meet NAFTA requirements throughout the uncertain implementation of Customs’ refund procedures. Certificates of Origin from exporter-suppliers often lagged behind merchandise entries by many months. To account for this, Ford implemented internal procedures to ensure that NAFTA duty-free claims were filed only for eligible parts and materials, and only after the necessary Certificates were in-hand. Between 1996 and 1997, Customs conducted five separate “NAFTA Origin Verification” audits of all of Ford’s NAFTA preference claim activities. The final report of one of the audits stated that Ford’s record keeping was a “noteworthy accomplishment.” *921 J.A. 154. Ford claims that this meant, among other things, that “Customs knew that Ford had in its possession NAFTA CO’s to support all of Ford’s NAFTA preference claims.” Id.
The record also shows that the process for submitting duty-free proof documents varied greatly from port to port, and differed depending on which Customs filing vehicle was used. For example, while Customs in Detroit was denying Ford’s § 1520(d) claims for failure to timely file the Certificates of Origin, Customs ports in Buffalo, Laredo, and El Paso were processing and refunding Ford’s claims where Ford did not file the Certificates with Customs within one year of the date of entry. At these other ports Ford submitted Certificates of Origin if and when Customs requested that Ford do so. Ford negotiated with Customs for nearly two years in an attempt to establish a mechanism to efficiently submit Certificates of Origin in support of electronically filed claims. Ford seems to have largely coped with Customs’ uncertain and inconsistent duty-free refund process despite Customs’ belated guidance on filing of Certificates.
At a minimum, if Customs wishes to change its position or remove the application of § 10.112 from NAFTA importations, Customs should have given notice of proposed clear regulations, and enforced a uniform practice at all ports. It is clear that Ford acted reasonably and in accordance with precedent and custom. Although this court now remands to give Customs an opportunity to formulate a post-hoc reasonable explanation for its actions, Customs has had an opportunity to establish its actions as reasonable and has failed. See Maj. Op. at 916-17. I would hold that Ford’s Certificates were timely filed, and end this litigation.

. Additionally, applicable regulations do not mandate denial of claims with late Certificates of Origin, but rather provide that the port director may deny these claims. See 19 C.F.R. §§ 181.23, 181.33.